## MATTER OF McCLENDON

## In Deportation Proceedings

### A-11634829

### *Decided by Board May 19, 1967*

Respondent is deportable under section 241(a)(11), Immigration and Nationality
Act, as amended, on the basis of her conviction on a plea of guilty to obtaining
400 mill of demerol (isonipecaine) in violation of section 3351 of the New York
Public Health Law, since demerol is a salt derivative or preparation of isonipe-
caine or an addiction-forming opiate within the meaning of section 241(a)(11)
of the Act.

CHARGE:

Order: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251]—Convicted of viola-
tion of law governing and controlling the dispensing of
demerol (isonipecaine)—1962.

ON BEHALF OF RESPONDENT: Henry C. Levins, Esquire
1013 Williamson Building
Cleveland, Ohio 44114

On October 5, 1966, the special inquiry officer found the respondent
ineligible for any form of discretionary relief from deportation, and
directed that she be deported from the United States to England, alter-
natively to Jamaica, on the above-stated ground. He then certified the
case to this Board for review and final decision.

The record relates to a 41-year-old married female alien, a native
and citizen of Jamaica, who last entered the United States on or about
December 26, 1959. She was then in possession of an immigrant visa
and was admitted for permanent residence. On December 27, 1962, in
the Court of Special Sessions, City of New York, County of New York,
on her plea of guilty, she was convicted of obtaining 400 mill of de-
merol (isonipecaine) by fraud, deceit, misrepresentation and subter-
fuge for her own use in violation of section 3351 of the New York
Public Health Law.

Basically, the claim on appeal is that the respondent is not deport-
able because there is no evidence in the record that any examination

233

by experts, laboratories or chemists was made to establish that the substance involved in the respondent's conviction was of such a nature as to bring it within the scope of section 241(a)(11) of the Immigration and Nationality Act. However, one of the three pages of the certified record of the respondent's conviction is an affidavit made in the City Magistrates' Court of the City of New York by an agent of the State Narcotic Bureau identifying the substance involved as "400 Mill of Demoral (sic), a narcotic drug." Inasmuch as the information in this case did not specify the narcotic drug involved, it is permissible to utilize this affidavit made by the State Narcotic agent because it is part of the pleading on which the respondent was tried and is considered a part of the record of conviction.[1] Also, the respondent, a nurse, was convicted on her plea of guilty; and she conceded the truth of all the allegations of fact set forth in the order to show cause on which these proceedings are based, four of which being that she had been convicted "for obtaining 400 Mill of Demoral (Isonipecaine) by fraud, deceit, etc. * * *."

The foregoing establishes that the respondent was convicted of a violation of the New York State Public Health Laws in connection with a substance known as demerol. We will now proceed to determine the nature of demerol.

According to *Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals* (1966, p. 557), demerol is a trademark of Winthrop Laboratories. The substance commonly referred to as demerol, is actually demerol hydrochloride, a brand of meperidine. This is clear from the discussion relating to demerol at page 1068 of the *Physicians' Desk Reference, supra*. At page 1068, where demerol hydrochloride is discussed, and on page 557 where demerol compound tablets are discussed, it is pointed out that this substance may be habit forming. As a matter of fact, on page 557, where demerol compound tablets are discussed, it is pointed out that these tablets are made up of three substances, one of them being demerol which is described therein as a "narcotic" analgesic.

Exhibit 5 in the instant record is a reprint from the *American Hospital Formulary Service*, which discusses meperidine hydrochloride, and under the main heading are the three subheadings—demerol hydrochloride, isonipecaine hydrochloride, and pethidine hydrochloride. It appears, therefore, that demerol, which is actually demerol hydrochloride, is akin to, if not the same as, meperidene hydrochloride, isonipecaine hydrochloride, and pethidine hydro-

---

[1] *Matter of P—O—*, 8 I. & N. Dec. 670.

chloride.[2] This article, which as previously stated is part of the instant record, states that prolonged use of the drug may lead to addiction.

The allegation in the order to show cause contains the word "isonipecaine" in parenthesis after the word "demerol." The respondent, a nurse, conceded that the allegation is true. We also see that demerol, which is actually demerol hydrochloride,[3] and is a form of meperidine hydrochloride or isonipecaine hydrochloride, is encompassed within Title 21, U.S.C., section 502(g), which defines "basic class of narcotic drug" as meaning any one of the following classes of narcotic drugs * * *, by whatever trade name designated, Number 20 of which, under said sub-division (g) is "Pethidine (meperidine, isonipecaine) * * * and its salts."[4] Title 21, U.S.C., section 502, contains these definitions for the purpose of Chapter 11 relating to the manufacture of narcotic drugs under the Food and Drug Laws of the United States.

Additionally, it is noted that in Title 21, C.F.R., Part 305, and more particularly section 305.2(b), dealing with substances designated as opiates by the Commissioner of Narcotics pursuant to 21 C.F.R. 307.61(b), there is included in the substance "pethidine" in various forms. An opiate under 21 C.F.R. 305.2 was held to be a substance which has addiction-forming or addiction-sustaining liability similar to morphine or cocaine (*Matter of F—*, 10 I. & N. Dec. 616, *supra*).

In our opinion, all the foregoing establishes clearly that the substance "demerol," which was involved in the respondent's conviction, is a "salt derivative or preparation of * * * isonipecaine or any addiction-forming opiate," as contemplated by section 241(a)(11) of the Immigration and Nationality Act. Accordingly, we concur in the special inquiry officer's conclusion that the respondent's deportability on the charge contained in the order to show cause is established. The only additional comment required on the point is that the respondent conceded this in the course of the hearing before the special inquiry officer, at a time when she was represented by present counsel.

We find immaterial respondent's contention that she is not de-

---

[2] Demerol hydrochloride, pethidine hydrochloride and meperidine hydrochloride are terms which refer to one and the same substance—*Dorland's Illustrated Medical Dictionary*—23rd ed., pp. 326 and 1029.

[3] *Dorland's Illustrated Medical Dictionary*, 23rd ed., at p. 698 gives the definition of "isonipecaine" as demerol hydrochloride.

[4] This Board has found that this refers to isonipecaine, a substance within section 241(a)(11) of the Immigration and Nationality Act (8 U.S.C. 1251)—see *Matter of F—*, 10 I. & N. Dec. 616; and 26 U.S.C. 4731(a) and (f) and section 1(a), Narcotic Drug Import and Export Act, as amended.

321-654—69——17

portable because there was no commercial aspect to her case. She claims that she obtained and used the demerol herself because she was in great pain following the extraction of all of her teeth. This argument, however, overlooks the fact that "commercial aspects" are not essential under the statute. The sole determining factor here is the respondent's conviction of violation of a law governing and controlling the dispensing of demerol. Our inquiry ends with the establishment of that fact.

Finally, the special inquiry officer's opinion contains an adequate discussion of the factors which are usually taken into consideration in connection with the question of discretionary relief, to wit, family ties, employment records, etc. However, as said official has pointed out, the respondent is ineligible for relief from deportation in any form because of the very ground on which she is deportable. This aspect of the case requires no further comment.

ORDER: It is ordered that the special inquiry officer's decision of October 5, 1966, be and the same is hereby affirmed.